J-A14030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| XAVIER LACOSTA-FRANCO | |
| Appellant | No. 963 MDA 2021 |

Appeal from the Judgment of Sentence July 12, 2021
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0002791-2014

BEFORE:  BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                **FILED: AUGUST 16, 2022**

Appellant, Xavier LaCosta-Franco, appeals from his aggregate judgment of sentence of 29½ to 109 years' imprisonment for multiple sexual offenses against three minor victims and to his classification as a sexually violent predator ("SVP").  We affirm.

In 2014, Appellant was charged with three counts of rape of a child, three counts of involuntary deviate sexual intercourse ("IDSI") and other offenses.  The allegations concerned Appellant's sexual abuse of three minor females aged eight, thirteen and fifteen between 2010 and 2012.  The fifteen-year-old female was the daughter of Appellant's paramour and lived with Appellant.  The other two minor females were friends of the fifteen-year-old.

---

[*] Former Justice specially assigned to the Superior Court.

In August 2016, a jury found Appellant guilty of multiple counts of rape, IDSI, statutory sexual assault, aggravated indecent assault and indecent assault. On March 2, 2017, the trial court determined that Appellant was a sexually violent predator ("SVP") and imposed a lengthy sentence of imprisonment. Appellant filed a timely appeal, and on June 4, 2018, this Court reversed and remanded for resentencing at the trial court's request. The purpose was for resentencing in light of this Court's decision in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017), that held the SVP statute, 42 Pa.C.S.A. § 9799.24, was unconstitutional. *See id.* (imposition of SVP status constitutes criminal punishment; consequently, SVP statute unconstitutional because it permits Commonwealth to prove defendant's eligibility for SVP treatment with clear and convincing evidence instead of evidence beyond reasonable doubt).[1] The panel did not reach the merits of any of the issues that Appellant raised in that appeal.

On August 25, 2020, the trial court resentenced Appellant to the same term of imprisonment and again found him to be an SVP. The court, however, did not enter a new sentencing order on the docket. Appellant filed a post-sentence motion, which the trial court denied on December 23,

_____

[1] On March 26, 2020, our Supreme Court reversed our decision in *Butler* by holding that the lifetime registration, notification, and counseling requirements applicable to SVP's do not constitute criminal punishment and therefore were not unconstitutional. *Commonwealth v. Butler*, 226 A.3d 972, 976 (Pa. 2020).

2020. On January 22, 2021, Appellant filed an appeal to this Court. On May 21, 2021, this Court dismissed the appeal *sua sponte* due to the lack of a sentencing order and remanded for resentencing in accordance with our June 4, 2018 order.

On July 12, 2021, the court readvised Appellant that he was an SVP, resentenced him to the same aggregate term, and entered judgments of sentence on each count of conviction. Appellant filed timely post-sentence motions contending that there was insufficient evidence from which to declare him an SVP and that the SVP statute was unconstitutionally vague and overbroad. On July 16, 2021, the court entered an order denying Appellant's post-sentence motions. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

1. Whether the trial court abused its discretion in overruling [Appellant]'s objection to the prosecutor's closing argument during which the prosecutor effectively stated that Defense Counsel ignored a line of questioning because Defense Counsel knew [Appellant] was guilty?

2. The granting of Commonwealth's pretrial motion *in limine* regarding 404(B) and tender years statements were error.

3. Whether the evidence was insufficient to support the trial court's finding that [Appellant] was a "sexually violent predator" because the victims were neither "stranger[s]" nor "person[s] with whom a relationship had been instituted, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization?"

4. Whether 42 Pa.C.S.A. § 9799 is unconstitutionally vague in that it, together with the relevant law, simultaneously call for an

inquiry into the "extent to which the offender is likely to reoffend" due to a mental abnormality while the consideration of the factors to be used in this inquiry "are not to be used for risk assessment?"

5. Whether 42 Pa. C.S.A. § 9799 is unconstitutionally overbroad in that it effectively classifies all offenders as sexually violent predators unless 1) there is no victim or 2) [the] defendant has no mental abnormality?

6. Whether [Appellant]'s classification as a sexually violent predator with the attendant lifetime reporting requirements makes [Appellant]'s sentence illegal pursuant to the recently decided Pennsylvania Supreme Court case, **Commonwealth v. Muniz**, [164 A.3d 1189 (Pa. 2017)], which indicates that the provisions of SORNA are punitive in effect? As reporting is punitive, it is in reality part of a sentence, but lifetime reporting potentially extends the punishment to a lifetime penalty beyond the relevant statutory maximums.

Appellant's Brief at 11-12.

In his first argument, Appellant asserts that that the trial court abused its discretion by overruling defense counsel's objection to the prosecutor's closing argument. This claim does not warrant relief.

During cross-examination, defense counsel sought to discredit the second victim's testimony by raising alleged inconsistencies between her testimony at the preliminary hearing and at trial. The second victim testified as follows on cross-examination:

[DEFENSE COUNSEL]: Let me ask you this, it has been a while since the preliminary hearing in this case as well. I mean we are talking about events from 2011, 2012. The preliminary hearing this case was held in June of 2014, which is more than two years ago, was your memory better in June of 2014 or is it more accurate that you are in court at this time, if you have an opinion?

VICTIM #2: Not sure what you are asking me.

Q. I'm suggesting the version of events you are telling us now is in respects different than what you said over two years ago is because your memory is faded and you are struggling to remember the facts or not?

A. Lately I've been like scared about this and stuff and I'm like been trying to forget about it but everything that I have said the first time I'm saying now.

Q. You don't remember testifying differently at the preliminary hearing?

A. If there were different questions asked, yes, different ways.

Q. Do you remember, for example, describing the color of the pajamas that he was wearing at the time this occurred?

A. Right.

Q. You remember testifying to that?

A. Yes.

Q. But you don't remember testifying previously that there was one incident of anal intercourse and one not of anal intercourse?

A. It was one that did touch and one that didn't.

N.T., 8/22/17, at 124-26. In closing, defense counsel stated:

[Victim #2], herself, comes into court today, and if I understood her testimony correctly, for the first time describes two anal rapes on two separate occasions. In my recollection . . . that is not what the District Attorney said was expected in her opening statement and is not what is considered to be the theory of the case in the affidavit of probable cause.

N.T., 8/24/17, at 273. The prosecutor responded:

And, ladies and gentlemen, defense counsel was asking [Victim #2] a lot of questions and wasn't really referring to the transcript, do you remember testifying to this and not following

up or showing her the transcript but the one thing that really stuck out in my mind was that he asked her, do you remember testifying what color pajamas [Appellant] was wearing and her response was he was wearing red pajamas and then Mr. Waltman followed up and said, no, no, I'm not asking you that. I'm asking you if you remember testifying to that. And I honestly don't remember what her response was, but what I can tell you is that Mr. Waltman did not follow up.

*Id.* at 295-96. Defense counsel objected, "Your honor, the commentary of what I did or didn't do is irrelevant. I object." *Id.* at 296. The court overruled the objection without further argument or discussion. *Id.*

Appellant argues that the prosecutor engaged in misconduct by "suggesting that defense counsel's strategy in cross-examining the witness indicated he knew his client was guilty." Appellant's Brief at 19.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. 2008). "It is the duty of the trial judge to rule upon the [prosecutor's] comments; this Court is limited in its review to whether the trial court abused its discretion." *Commonwealth v. Brawner*, 553 A.2d 458, 463 (Pa. Super. 1989). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such a lack of support so as to be clearly erroneous." *Commonwealth v. Jones*, 240 A.3d 881, 889 (Pa. 2020).

- 6 -

In a criminal trial, "the prosecutor must be free to argue that the facts of record establish every element of the crime charged and must be free to respond fairly to the arguments of the defense." *Commonwealth v. Crumbley*, 270 A.3d 1171, 1182 (Pa. Super. 2022). The bounds of "oratorical flair" afford the prosecution significant leeway in this regard. *Id.* A prosecutor must have reasonable latitude in presenting his case to the jury and must be free to present his arguments with logical force and vigor. *Rolan*, 964 A.2d at 410. "Reversible error occurs only when the unavoidable effect of the . . . comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." *Crumbley*, 270 A.3d at 1182-83. "The touchstone is the fairness of the trial, not the culpability of the prosecutor." *Id.*

Appellant claims during closing argument the prosecutor implied that defense counsel abandoned a line of questioning on cross-examination because counsel believed that the witness was credible and that Appellant was guilty. The record demonstrates, however, that the prosecutor never commented on defense counsel's beliefs. The prosecutor merely contended that defense counsel failed to impeach the witness's credibility. More specifically, the prosecutor argued that defense counsel insinuated during cross-examination that the witness's trial testimony was different from her preliminary hearing testimony, but counsel failed to provide specific

examples of inconsistent testimony. This was a fair response to defense counsel's questions during cross-examination that suggested the witness changed her testimony. N.T., 8/22/17, at 124-26. We see nothing improper in this argument, let alone anything that "would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." **Crumbley**, 270 A.3d at 1182-83.

In his next argument, Appellant contends that the trial court abused its discretion by allowing the Commonwealth to introduce evidence of uncharged misconduct during trial. Appellant has waived this argument.

The Rules of Appellate Procedure require that an appellant who refers to evidence in his brief must include "a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c). An appellant's failure to properly develop an argument with citations to the relevant portions of the record will result in the waiver of his appellate claims. **Commonwealth v. Brown**, 200 A.3d 986, 991 (Pa. Super. 2018) ("[i]n order for this Court to determine whether [the appellant] was prejudiced by the trial court's adverse ruling on his motion in limine, he must, at a minimum, direct us to the specific places in the record where allegedly prejudicial testimony was elicited"); **see also Commonwealth v. Mulholland**, 702 A.2d 1027, 1034 n.5 (Pa. 1997) ("[i]n a record containing

thousands of pages, this court will not search every page to substantiate a party's incomplete argument").

While Appellant complains in his brief that the trial court improperly permitted Rule 404(b) evidence of uncharged misconduct, he fails to identify the evidence he believes was inadmissible or the place(s) in this record where this evidence was introduced. Due to these omissions, we have no way to determine whether the evidence was inadmissible or prejudicial to Appellant. Consequently, this argument is waived. Pa.R.A.P. 2119(c); **Brown**, **Mulholland**, **supra**.

Next, Appellant argues that the evidence was insufficient to justify the court's determination that he is an SVP because his offenses were not predatory under the SVP statute. We disagree.

SORNA, the Sex Offender Registration and Notification Law,[2] provides rigorous standards for determining whether the defendant is an SVP. First,

---

[2] 42 Pa.C.S.A. §§ 9799.51-9799.75. SORNA's purpose is to "substantially comply with [federal law] and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to registration of sexual offenders and community notification about sexual offenders." 42 Pa.C.S.A. § 9799.11.

SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law. Megan's Law I was enacted in 1995 but was held unconstitutional by our Supreme Court in **Commonwealth v. Williams**, 733 A.2d 593 (Pa. 1999). In response, the General Assembly enacted Megan's Law II in 2000. In 2003, the Supreme Court held that some portions of Megan's Law II were unconstitutional, **Commonwealth v.**
*(Footnote Continued Next Page)*

the defendant must be convicted of a "sexually violent offense," 42 Pa.C.S.A. § 9799.55, which Subchapter I of SORNA defines to include various serious felonies (*e.g.*, rape, IDSI, kidnapping a minor and other forms of sexual assault). *See* 42 Pa.C.S.A. §§ 9799.53 and 9799.55. Next, the defendant must have a "mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses" or "has ever been determined by a court to have a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses under a former sexual offender registration law of this Commonwealth." 42 Pa.C.S.A. § 9799.53. To determine whether the

*(Footnote Continued)* ————————————

**Gomer Williams**, 832 A.2d 962 (Pa. 2003), and the General Assembly responded by enacting Megan's Law III. In 2006, the United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901—16945. In 2011, the General Assembly passed SORNA. SORNA went into effect on December 20, 2012, while Megan's Law II expired on the same date. In 2013, our Supreme Court struck down Megan's Law III for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. **Commonwealth v. Neiman**, 84 A.3d 603, 616 (Pa. 2013). By that time, however, SORNA had already replaced Megan's Law III.

SORNA has been amended several times, most importantly in Acts 10 and 29 of 2018. Through Act 10, as amended in Act 29, the General Assembly split SORNA I's former Subchapter H into a revised Subchapter H and Subchapter I. Subchapter I applies to sexual offenders who committed an offense on or after April 22, 1996 but before December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.51—9799.75. Revised Subchapter H applies to offenders who committed an offense on or after December 20, 2012. **See** 42 Pa.C.S.A. §§ 9799.10—9799.42. Here, Appellant's offenses took place before December 20, 2012, so we will apply Subchapter I to this case.

- 10 -

defendant meets these standards, the SOAB must evaluate fifteen criteria relating to the facts of the offense, the defendant's prior offense history, his individual characteristics, and any other factors reasonably related to the risk of reoffense, 42 Pa.C.S.A. § 9799.58(b), and present a written report of its assessment to the district attorney. 42 Pa.C.S.A. § 9799.58(d). The SOAB must also provide a written summary of the defendant's conduct that specifies, *inter alia*, (1) whether the victim was a minor, (2) the manner of weapon or physical force used or threatened, (3) if the offense involved unauthorized entry into a room or vehicle occupied by the victim, and (4) if the offense was part of a course or pattern of conduct involving multiple incidents or victims. 42 Pa.C.S.A. § 9799.58(d.1). Upon praecipe by the district attorney, the court must hold a hearing in which it determines whether the Commonwealth has proved by clear and convincing evidence that the defendant is an SVP. 42 Pa.C.S.A. § 9799.58(e)(3).

> In order to affirm an SVP designation,
>
> we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a [SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

***Commonwealth v. Hollingshead***, 111 A.3d 186, 189 (Pa. Super. 2015).

In this case, the only element challenged by Appellant is "predatory" behavior, so we limit our sufficiency analysis to this element. SORNA

defines "predatory" as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." 42 Pa.C.S.A. § 9799.53. The evidence presented by Dr. Veronica Valliere, the Commonwealth's expert on the classification of SVP's, demonstrates that Appellant not only was likely to engage in predatory conduct but actually did so. The court admitted Dr. Valliere's written report into evidence during Appellant's SVP hearing. Dr. Valliere testified that she extensively reviewed the record of this case and interviewed Appellant for 45 minutes. N.T., 2/21/17, at 6-7 (SVP hearing). Appellant was convicted of a multitude of sexually violent offenses against three victims, including rape, statutory sexual assault, IDSI, indecent assault and aggravated indecent assault. Dr. Valliere's report observed that Appellant resided with his paramour and paramour's fifteen-year-old daughter, the first victim. Report at 3. Appellant sexually assaulted the fifteen-year-old twice and threatened to kill her and her mother (his paramour) if she talked about it. *Id.* Appellant also sexually assaulted a thirteen-year-old female, the second victim, who had come over to visit Appellant's paramour's daughter. *Id.* at 2-3. Appellant threatened to kill the thirteen-year-old and her family if she told anyone, a threat that prompted the girl's family to move to Florida. *Id.* Finally, Appellant grabbed the breast of an eight-year-old girl, the third victim, who

came over to Appellant's paramour's house. *Id.* at 3. Only Appellant and the girl were in the house at the time. *Id.* Dr. Valliere concluded:

> Appellant was acquainted with the victims through different relationships, either neighbor, child of a paramour, or friend of a child. He engaged in an act with one child, grabbing her breast suddenly, and raped two others, then threatening them to ensure silence. All his behavior promoted a secret, threatening relationship with the children to facilitate the victimization. His behavior meets the statutory definition of predatory behavior.

*Id.* at 10.

Based on the evidence presented during Appellant's SVP hearing, including Dr. Valliere's testimony and expert report, we conclude that the Commonwealth presented sufficient evidence to fulfill the element of predatory behavior. Appellant's challenge to the sufficiency of the evidence fails.

Next, Appellant contends that the trial court erred by refusing to hold that SORNA's procedures for assessing whether the defendant is an SVP are unconstitutionally vague. We disagree based on our analysis in *Commonwealth v. Kopicz*, 840 A.2d 342 (Pa. Super. 2003), which rejected a similar void-for-vagueness challenge to Megan's Law II.

There is a strong presumption in the law that legislative enactments are constitutional, and a heavy burden of persuasion rests upon one who challenges the constitutionality of a statute. A statute will only be found unconstitutional if it clearly, palpably and plainly violates the Constitution. *Commonwealth v. Williams*, 733 A.2d 593, 603 (Pa. 1999). All doubts

are to be resolved in favor of sustaining the constitutionality of the legislation. ***Commonwealth v. Blystone***, 549 A.2d 81, 87 (Pa. 1988).

The void for vagueness doctrine requires statutes to be drawn with sufficient definiteness and specificity to provide fair warning of the conduct proscribed by the law and to restrict the discretion of governmental authorities or courts in enforcing the law. ***Papachristou v. City of Jacksonville***, 405 U.S. 156, 165-170 (1972). The void for vagueness doctrine applies both to penal and nonpenal statutes. ***Johnson v. United States***, 576 U.S. 591, 612-13 (2015) (Thomas, J., concurring in judgment) (collecting cases). We therefore apply it here, even though SORNA is not a penal statute. ***See Butler***, 226 A.3d 972, 976 (lifetime registration, notification, and counseling requirements applicable to SVP's do not constitute criminal punishment); ***Commonwealth v. Lacombe***, 234 A.3d 602 (Pa. 2020) (Subchapter I of SORNA is nonpunitive and does not violate constitutional ex post facto principles).

Appellant argues that SORNA's SVP assessment procedures are void for vagueness for the following reasons:

> [SORNA defines an SVP as] someone who has a mental abnormality or personality disorder that makes them likely to reoffend by "engag[ing] in predatory sexually violent offenses[] . . ." 42 Pa.C.S.[A.] § 9799.53. In making that determination, the Court is required to consider a number of factors including "[c]haracteristics of the individual, including . . . . (iii) A mental illness, mental disability or mental abnormality." 42 Pa.C.S.[A.] § 9799.58(b)(3). Yet because of the manner in which the statute is written, the absence of any one of those factors, *i.e.*, including whether or not the personal has a mental health

- 14 -

condition, is not considered dispositive.  The courts and SOAB are free to interpret and apply the statute in any way it wishes and for this reason the statute must fail.

Appellant's Brief at 32-33.  Appellant further objects that Section 9799.58(b)(4), which calls for assessment of "factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense," fails to specify what these factors should be.  *Id.* at 31.

It does not appear that Pennsylvania appellate courts have addressed the constitutionality of SORNA's SVP assessment procedures.  Two decades ago, however, this Court held in *Kopicz* that the SVP assessment procedures in Megan's Law II were not void for vagueness.  *Kopicz's* incisive analysis deserves recitation at length:

The Act [Megan's Law II] defines a "sexually violent predator" as:

A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.

42 Pa.C.S.A. § 9792.  Moreover, "mental abnormality" is defined as:

A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.

*Id.* Although the term "personality disorder" is not defined in the Act, it is a psychiatric term defined in the Diagnostic and Statistical Manual of Mental Disorders IV. Finally, the Act defines "predatory" sexually violent offenses as ones in which the act is "directed at a stranger or at a person with whom a relationship has been established or promoted for the primary purpose of victimization." 42 Pa.C.S.A. § 9792.

A statute is constitutionally void [for vagueness] only if it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. However, a statute will not be deemed unconstitutionally vague if the terms, when read in context, are sufficiently specific that they are not subject to arbitrary and discriminatory application.

[***Commonwealth v. Cotto***, 753 A.2d 217, 220 (Pa. 2000)].

Appellant contends that the definitions of "mental abnormality" and "personality disorder" provide no objective standards, so that the potential for an erroneous classification of an offender as a sexually violent predator is enormous. Indeed, he argues that, under the definition provided in the Act, an offender could be diagnosed as having a "mental abnormality" simply because the court deems him to be a "menace" to society. In addition, because the psychiatric definition of "personality disorder" contains a catchall diagnosis, "identifying an offender as possessing a psychiatric disorder becomes merely a formality as an offender conceivably will fit within the overreaching parameters of this definition even if that offender does not fall within any of the other nine diagnoses."

This Court's recent decision in ***Commonwealth v. Rhoads***, 836 A.2d 159 (Pa. Super. 2003), is controlling. There, as here, the appellant mounted a void for vagueness challenge against the Act's definition of "sexually violent predator." We noted that an offender is classified as a "sexually violent predator" only if he has been convicted of one of the predicate offenses listed in § 9795.1, and then only after he has undergone a thorough assessment hearing pursuant to § 9795.4. Section 9795.4(b) lists numerous factors that the [SOAB] must consider before

- 16 -

making its determination. These factors relate to (a) the facts of the offense, *i.e.*, number of victims, the age and mental capacity of the victim, the relationship of the offender to the victim, the nature of the sexual contact, and whether force or unusual cruelty was used in the attack; (b) the offender's prior history, *i.e.*, his prior criminal record, including sentences completed, and his participation in sexual offender programs; (c) the characteristics of the offender, *i.e.*, his age, use of illegal drugs, mental illness or abnormality, and any behavioral characteristics that contribute to his conduct; and (d) any other relevant factors relating to his risk of reoffense. 42 Pa.C.S.A. § 9795.4(b). As we held in **Rhoads**, **supra**,

> Given the definitive filtering mechanism offered by § 9795.1 in term[s] of clearly defining who is subject to a SVP assessment and the exhaustive determinative factors utilized in making such an assessment in accordance with § 9795.4, we find the statute is sufficiently clear and specific to withstand appellant's constitutional challenge.

*Id.* at 162–63. Appellant offers no new argument here; thus, his claim fails.

*Id.* at 348-50.

The text in Megan's Law II that survived a void-for-vagueness challenge in **Kopicz** is identical to the text in SORNA that Appellant claims is void for vagueness in the present case. **Compare** 42 Pa.C.S.A. § 9799.53 (SORNA's definitions of "sexually violent predator," "mental abnormality," and "predatory") **with** 42 Pa.C.S.A. § 9792 (expired December 20, 2012) (identical definitions in Megan's Law II); **compare also** 42 Pa.C.S.A. § 9799.58 (SORNA's criteria for SVP assessment) **with** 42 Pa.C.S.A. § 9795.4 (expired December 20, 2012) (identical assessment criteria in Megan's Law II). SORNA thus contains the same "definitive filtering mechanism[s]" as

Megan's Law II for distinguishing SVP's from non-SVP's. Accordingly, we hold that the trial court properly rejected Appellant's argument that SORNA's SVP assessment procedures are void for vagueness.

Next, Appellant argues that the SVP designation process is unconstitutionally overbroad based on his claim that all sex offenders are classified as SVP's unless there is no victim or the defendant has no mental abnormality. We disagree.

> A statute is overbroad
>
> if by its reach it punishes a substantial amount of constitutionally-protected conduct. If the overbreadth of the statute is substantial, judged in relation to its legitimate sweep, it may not be enforced against anyone until it is narrowed to reach only unprotected activity. The function of overbreadth adjudication, however, attenuates as the prohibited behavior moves from pure speech towards conduct, where the conduct falls within the scope of otherwise valid criminal laws that reflect legitimate state interests.

*Commonwealth v. Mayfield*, 832 A.2d 418, 425 (Pa. Super. 2003).

Appellant's argument fails because the SVP assessment process does not punish constitutionally protected conduct. The first qualification for SVP status is a conviction for a "sexually violent offense," which Subchapter I of SORNA defines to include various serious felonies (e.g., rape, IDSI, kidnapping a minor and other forms of sexual assault). *See* under 42 Pa.C.S.A. §§ 9799.53 and 9799.55. Obviously, none of this criminal conduct is constitutionally protected. In addition, as discussed above, not all defendants convicted of sexually violent offense qualify as SVP's. A

defendant is not designated as an SVP unless, *inter alia*, he possesses "a mental abnormality or personality disorder which makes [him] to engage in predatory sexually violent offenses," 42 Pa. C.S.A. § 9799.53, a standard that requires analysis of fifteen criteria concerning the defendant's individual characteristics, the nature of the offense, and the defendant's prior offense history. 42 Pa.C.S.A. § 9799.58(b). In short, the SVP statute is not overbroad because it has two reliable safeguards against SVP treatment of constitutionally protected conduct: the requirement that the defendant be convicted of a sexually violent offense, and the additional requirement that he fulfill the rigorous criteria within Section 9799.58(b).

In his final argument, Appellant contends that the SVP statute is unconstitutional because it is punitive in nature, but only clear and convincing evidence is necessary to establish that he is an SVP instead of proof beyond a reasonable doubt. This argument fail as our Supreme Court's recent decisions in **Butler** and **LaCombe** provide that SORNA is non-punitive.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/16/2022