2024 PA Super 271

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT M. ANDERSON | : | |
| | : | |
| Appellant | : | No. 710 EDA 2023 |

Appeal from the PCRA Order Entered February 8, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013588-2013

BEFORE: PANELLA, P.J.E., BECK, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED NOVEMBER 13, 2024**

Appellant, Robert Anderson, appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*. ("PCRA"), collaterally challenging his jury conviction of murder in the third degree.[1] Appellant raises multiple claims of prior counsel's ineffective assistance based on 15 separate comments in the prosecutor's summation and a discretionary trial court ruling. All of the claims are resolvable on the trial court record. We affirm.

On direct appeal, this Court found the trial court's statement of facts to have been supported by the record, reproduced as follows:

> On July 13, 2013, Daimeen Walker and Josiah McClarence were involved in an altercation with Giovanni Bain and Nkingi Jones in southwest Philadelphia. Following the incident, Mr. Walker called Tyreek Hall, also known as "Southwest Reek," for help. Driving a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

gold Buick, Mr. Hall and Appellant picked up Mr. Walker and Mr. McClarence and asked them to identify the men with whom they had brawled. After Mr. Walker and Mr. McClarence did so, Appellant and Mr. Hall switched cars, getting into a rented silver Ford Mustang.

At approximately 4:00 p.m., Appellant and Mr. Hall drove to North 64th Street, where Mr. Jones and Mr. Bain were playing basketball with brothers Aaron and Tremaine Rogers. Mr. Hall asked if any of the men had been bothering his cousin. Mr. Jones informed him that the fight was over. At that time, Appellant told Mr. Hall to "get busy" with the young men. Mr. Hall took a gun from his waistband and fired seven times into the crowd before fleeing with Appellant.

Police responded to the scene and were provided with a description of the perpetrators. As they began to search for evidence, officers discovered Tremaine Rogers lying face down in the back yard of 905 N. 64th Street. Mr. Rogers had suffered a gunshot wound to the lower back and was pronounced dead at the scene.

Police interviewed Mr. Bain, Mr. Jones, and Aaron Rogers, who described both the fistfight and shooting. Police also interviewed Mr. McClarence and Mr. Walker, who identified Mr. Hall as "Southwest Reek" and Appellant as "Bobby." From two photo arrays, Mr. Bain, Mr. Jones, and Mr. Rogers identified Appellant as the driver and Mr. Hall as the shooter. Further investigation revealed that on June 26, 2013, Appellant rented a gray Ford Mustang. Although the car was due to be returned July 27, 2013, Appellant exchanged the car on July 13, 2013 at 5:32 p.m., approximately one half hour after Mr. Rogers was pronounced dead.

*Commonwealth v. Anderson*, No. 2117 EDA 2015, 2017 WL 2558644, *1 (Pa. Super., filed June 13, 2017) (the "*Direct Appeal*") (footnote omitted).

In addition, when the shooting started, Justin Mond was standing in front of the house and fled up the street. N.T. 3/9/15, 193-197. A projectile was found two months later in the front door of a house in line with where a gunshot fired by co-defendant at Mond might have gone. N.T. 3/6/15, 40-44, 188-190.

- 2 -

Appellant and co-defendant Hall were jointly tried by a jury before the Honorable Sandy L.V. Byrd starting March 3, 2015. At trial, co-defendant Hall testified he was acting in self-defense and claimed Aaron Rogers had a gun on the night of the murder. N.T. 3/9/15, 9-131. Appellant did not testify.

On March 12, 2015, the jury returned its verdict finding Appellant guilty of murder in the third degree.[2] N.T. 3/12/15, 50. On June 26, 2015, the court imposed a term of 20 to 40 years' incarceration.

Appellant filed a timely appeal and raised three claims: the insufficiency of the evidence; trial court error in denying a mistrial for the prosecutor's reference to Appellant's post-arrest silence and characterization of defense arguments in summation; and trial court error in engaging in a shouting match with and admonishment of trial counsel. This Court affirmed the judgment of sentence on June 13, 2017. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on November 22, 2017. **See Commonwealth v. Anderson**, 174 A.3d 1024 (Table).

Appellant filed a timely *pro se* PCRA petition on September 5, 2018. Retained PCRA counsel filed an amended petition. The Commonwealth filed a Motion to Dismiss, to which Appellant filed a response.

---

[2] The jury also found Appellant not guilty of murder in the first degree, criminal conspiracy and possessing an instrument of crime. N.T. 3/12/15, 50. Co-defendant Hall was tried under Docket No. CP-51-CR-0013587-2013. The jury found co-defendant guilty of murder in the third degree and possessing an instrument of crime. **Id**., 44. It found him not guilty of murder in the first degree and conspiracy. **Id**.

The Honorable Scott DiClaudio, presiding as the PCRA court, issued a Notice of Intent to Dismiss the Petition in accordance with Pa.R.Crim.P. 907 on January 5, 2023, stating the reasons it found each of the claims meritless. Notice of Intent to Dismiss, 2-3; Trial Court Record, 389-390. The PCRA court dismissed the petition on February 24, 2023. Order, 2/24/2023; Trial Court Record, 403. Appellant filed a timely Notice of Appeal, and Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). Trial Court Record, 404, 422-424.

Appellant raises four claims on appeal, as follows:

I.    Did trial and direct appeal counsel render ineffective assistance for failure to object to and argue all available instances in support of his Petitioner's claim of prosecutorial misconduct? …

II.   Was direct appeal counsel ineffective for failing to quote and discuss the prosecution's improper references to petitioner's post-arrest silence? …

III.  Did the court below err in failing to consider cumulative prejudice when evaluating the above issues, since there are more than one issue meeting the first prong of the ineffectiveness analysis? …

IV.   Was direct appeal counsel ineffective for failing to raise on appeal the trial court's refusal to have the testimony of co-defendant Hall read back to the jury?

Appellant's Brief, 3.

We review an order denying a PCRA petition to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. **Commonwealth v. Brown**, 196 A.3d 130, 150 (Pa. 2018); **Commonwealth v. Jarosz**, 152 A.3d 344, 350 (Pa. Super. 2016). The PCRA

court need not hold an evidentiary hearing if it "can determine from the record that no genuine issues of material fact exist." ***Commonwealth v. McCready***, 295 A.3d 292, 298 (Pa. Super. 2023) (citation omitted). We review the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011).

To obtain relief on a claim of prior counsel's ineffective assistance, a PCRA petitioner must satisfy the performance and prejudice test set forth in ***Strickland v. Washington**,* 466 U.S. 668, 687 (1984). "In Pennsylvania, we have applied the ***Strickland*** test by looking to three elements: the petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." ***Commonwealth v. Robinson***, 82 A.3d 998, 1005 (Pa. 2013) (citing ***Commonwealth v. Pierce**,* 527 A.2d 973, 975 (Pa. 1987)). The Sixth Amendment right to counsel is recognized "not for its own sake, but because of the effect it has on the accused's right to a fair trial." ***Robinson***, 82 A.3d at 1005 (internal quotation marks omitted).

> With regard to the second prong (reasonable basis), "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." ***Commonwealth v. Hanible***, 30 A.3d 426, 439 (Pa. 2011). We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative "offered a potential for success substantially greater than the course actually pursued." ***Spotz***, 18 A.3d at 260. Our review of counsel's

- 5 -

performance "must be highly deferential." ***Commonwealth v. Tharp***, … 101 A.3d 736, 772 (Pa. 2014) (quoting ***Strickland v. Washington***, 466 U.S. 668, 689 (1984)). To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. [***Hanible***, 30 A.3d at 439]*.*

***Brown***, 196 A.3d at 150–51 (internal citations edited for clarity). A failure to satisfy any of the three prongs is fatal to a claim of counsel's ineffective assistance. ***Id.*** at 151; ***Commonwealth v. Midgley***, 289 A.3d 1111, 1119 (Pa. Super. 2023).

Appellant's initial set of claims, which he combines as though one, are based on the prosecutor's summation. It alleges both trial and appellate counsel's ineffective assistance in raising only some of the numerous allegedly objectionable instances, rather than all. Appellant's Brief, 23-26. Appellant bases this allegation of ineffective assistance on ten specific comments made by the prosecutor, separated into two categories. While some comments were within the objections made at trial, the majority were not and so appellate counsel could not be faulted for not having raised them in the direct appeal. ***Commonwealth v. Holmes***, 79 A.3d 562, 563 (Pa. 2013) ("we hold that ***Grant's*** general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel").[3]

_____

[3] Appellant also argues that trial counsel's "failure to object to these additional instances of prosecutorial misconduct damaged direct appeal counsel's ability
*(Footnote Continued Next Page)*

A prosecutor enjoys substantial latitude to present argument with "logical force and vigor." ***Commonwealth v. Bryant***, 67 A. 3d 726, 728 (Pa. 2013) (citation omitted); ***Commonwealth v. Marshall***, 633 A.2d 1100, 1107 (Pa. 1993) (citations omitted). "While it is improper for a prosecutor to offer any personal opinion as to guilt of the defendant or credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt." ***Bryant***, 67 A.3d at 727-728. A prosecutor does not commit misconduct merely by summarizing the evidence "with the oratorical flair allowed during argument," ***Marshall***, 633 A.2d at 1107, or by fairly commenting on the evidence and responding to defense arguments. ***Commonwealth v. Wayne***, 720 A.2d 456, 468 (Pa. 1998). The bounds of "oratorical flair" afford the prosecution significant leeway in this regard, but "when statements deteriorate into impermissible characterizations and inflammatory name-calling that are divorced from the record or irrelevant to the elements of the crime at issue, they are substantially unwarranted and must be scrutinized for prejudicial effect[.]"

_____

to put before this Court a full picture of the objectionable nature of the speech as a whole." Appellant's Brief, 28. As discussed below, none of these ten comments warranted relief and therefore appellate counsel's alleged inability to present a full picture was not damaged. "While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is true: selecting the few most important issues succinctly stated presents the greatest likelihood of success." ***Commonwealth v. Ellis***, 626 A.2d 1137, 1140 (Pa. 1993). ***See Commonwealth v. Robinson***, 864 A.2d 460, 480 n.28 (Pa. 2004).

*Commonwealth v. Clancy*, 192 A.3d 44, 65 (Pa. 2018); *Commonwealth v. Crumbley*, 270 A.3d 1171, 1182 (Pa. Super.), *appeal denied*, 284 A.3d 884 (Pa. 2022). Reversible error occurs only if the prosecutor has deliberately attempted to destroy the factfinder's objectivity. *Commonwealth v. Miles*, 681 A.2d 1295, 1300 (Pa. 1996).

An ineffectiveness claim based on counsel's failure to object to a prosecutor's closing argument has merit where it is demonstrated that the comment deprived the petitioner of a constitutional or statutory right, such as the right to a fair trial or due process. *See Commonwealth v. Tedford*, 960 A.2d 1, 28-29 (Pa. 2008). "The touchstone is the fairness of the trial, not the culpability of the prosecutor." *Id*. at 28. The PCRA court ruled that it "is apparent that none of [the comments raised in the petition] were so egregious that the unavoidable effect would be that the jury was unable to properly weigh the evidence and render a true verdict." PCRA Court Opinion, 5. We agree.

In the direct appeal, Appellant raised a claim of trial court error in denying a motion for mistrial based on multiple specific comments in the prosecutor's closing argument. We recognize that an allegation of ineffectiveness based on a failure to object to the prosecutor's closing argument is a different legal claim than one of trial court error in denying a mistrial based on the same argument. *See Commonwealth v. Collins*, 888 A.2d 564, 573 (Pa. 2006) ("a Sixth Amendment claim of ineffectiveness raises a distinct legal ground for purposes of state PCRA review under §

9544(a)(2)"). Nonetheless, "the [ineffectiveness] claim may fail on the arguable merit or prejudice prong for the reasons discussed on direct appeal." *Id*. Appellant's failure to delineate his PCRA claim from that raised on direct appeal, however, obfuscates the effect of that ruling on the claims raised in the petition. Also, Appellant's legal theory that raising more allegations of improper argument by the prosecutor would have resulted in relief in the direct appeal, Appellant's Brief, 27, rests on the whether any of the additional claims have merit because this Court found no merit to those raised in the direct appeal. ***Direct Appeal***, *4-*5.[4]

Appellant listed five comments by the prosecutor that he alleges disparaged defense counsel, as follows:

> These are some great attorneys. They can do a lot to wipe things away. …
>
> And these wonderful attorneys can get up here and try and pull the wool over your eyes and tell you that is not why he fired. …
>
> It along with several of the other things that were said by defense attorneys in their closing is blatantly and provably not true. …
>
> There are a lot of things that great defense attorneys can do. They can shade a lot of things. They can gild things the way they want them gilded. …
>
> Ladies and gentlemen, in this case these two individuals, these two attorneys, got up and did a great job of trying to make you think Aaron Rogers had a gun . . . He admitted to murder and no

---

[4] Appellant sought review of the trial court's denial of a mistrial on the basis of: allegedly improper comment on post-arrest silence; and describing defense arguments with words such as "concocted" and "ridiculous." ***See Direct Appeal***, *4-*5. This Court held that the arguments were not improper. ***Id.***

amount of fancy lawyering or clever attorneys can make that go away. They have tried to pull the wool over your eyes.

Appellant's Brief, 26.

"[I]n order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made." **Commonwealth v. Weiss**, 776 A.2d 958, 968 (Pa. 2001); **Crumbley**, 270 A.3d at 1182. Of the five comments Appellant lists, each was proper in context as they were grounded in the facts of the case or fair response to the arguments made by defense counsel. **See Clancy**, 192 A.3d at 65 ("we should not preclude or condemn a prosecutor's characterizations of the defendant that are both based upon the record and that inherently inform elements of an offense at issue, especially where the remarks constitute a fair response to defense counsel's argument"). **See, e.g., Commonwealth v. Henry**, 706 A.2d 313, 330-31 (Pa. 1997) (references to defense as "ridiculous" did not constitute misconduct); **Commonwealth v. Davis**, 565 A.2d 458, 466 (Pa. Super. 1989) (no misconduct where prosecutor's argument, though "arguably sarcastic," was based on evidence); **Commonwealth v. Maxwell**, 477 A.2d 1309, 1316-17 (Pa. 1984) (prosecutor's summation permissibly characterized defense counsel as "blowing smoke").

The reference to "great attorneys," who can "do a lot to wipe things away," N.T. 3/10/15, 131, directly responded to the meager attempt by defense counsel to undermine Daimeen Walker's in-court testimony in which he confirmed that his statement to police reported accurately what happened

- 10 -

the day of the shooting. N.T. 3/3/15, 253-254. The prosecutor explained that the only argument presented that the statement was not accurate was that Walker had been waiting at homicide for a "long time" before speaking with detectives. Of course, that alleged delay did not undermine Walker's credibility in court. N.T. 3/10/15, 130-131.

The reference to "wonderful attorneys" who tried to "pull the wool over your eyes and tell you that is not why [co-defendant] fired," N.T. 3/10/15, 155, directly responded to the defense argument that Aaron Rogers supposedly had a gun and pulled it first. The prosecutor's comment rested on the testimony of both Gianni Bain and Nkangi Jones that Aaron Rogers did not have a gun that day. N.T. 3/3/15, 304; N.T. 3/4/15, 101. This was proper argument. *Commonwealth v. Guilford*, 861 A.2d 365, 371–72 (Pa. Super. 2004) (not improper for prosecutor to argue defense counsel "tried to pull the wool over your eyes" where based on the record or "context of defense counsel's conduct").

The prosecutor's argument that "things that were said by defense attorneys in the closing is blatantly and provably wrong", N.T. 3/10/15, 161, was directly preceded by his argument based on testimony at trial that the four surviving victims of the shooting "all cooperated immediately with whichever officer walked up to them." *Id*. The defense had elicited at trial that police reports indicated that the witnesses were not initially cooperative. N.T. 3/6/15, 205-206. In direct response, the Commonwealth called Officer Dionne Madison to explain that her report that some persons at the scene were not

cooperative, used by defense attorneys in cross-examination, referred to the people who had been inside the house at the time of the shooting and not the three teenagers outside. *Id*., 211-212. The prosecutor's argument was based directly on trial testimony and therefore proper.

The reference to "great attorneys can … shade a lot of things … can gild things" referred to defense arguments against the credibility of teenagers Gianni Bain and Nkingi Jones. N.T. 3/10/15, 167-169. The prosecutor continued, "[b]ut you can't change these kids [Jones and Bain] into something other than what they are," which were teenagers who choke up and start to cry when identifying Appellant and co-defendant in a photo array, and "testified consistently, gave statements consistently." N.T. 3/10/15, 169. "[A] prosecutor may respond to challenges to his witnesses' credibility." *Commonwealth v. Drummond*, 775 A.2d 849, 858 (Pa. Super. 2001) (*en banc*).

With respect to the final passage of alleged disparagement, Appellant's selectively-edited quotation isolates the complained of comment from its context. *See* Appellant's Brief, 26. That context refutes that the prosecutor meant to disparage counsel. The prosecutor's argument was based entirely on the record evidence of the key factual dispute, whether Aaron Rogers had a gun. At trial, two witnesses who survived the shooting, Nkingi Jones and Gianni Bain, testified that co-defendant Hall opened fire on the order of Appellant and that Aaron Rogers did not have a gun. N.T. 3/3/15, 304, 313-320, 327-328; N.T. 3/4/15, 87-102. Co-defendant testified that he opened

fire in response to Aaron Rogers pulling a gun. N.T. 3/9/15, 31-40, 86-94. The emphasized language in the quotation below is the portion quoted by Appellant in his brief:

> *Ladies and gentlemen, in this case these two individuals, these two attorneys, got up and did a great job of trying to make you think Aaron Rogers had a gun*. But if you look at the evidence in this case, you know without any question beyond a reasonable doubt that is not why this man [co-defendant] fired. They came with the illegal gun. They came with the car they could ditch. They prepared to shoot it out. They said it themselves. They were ready to shoot. They came ready to cover up what they did. And Southwest Reek said and he admitted to murder. He said the reason he shot was because these kids talked too reckless. *He admitted to murder and no amount of fancy lawyering or clever attorneys can make that go away. They have tried to pull the wool over your eyes*, ladies and gentlemen. I ask you very simply, don't let that happen. Don't let a gun be invented out of thin air.

N.T. 3/10/15, 193. The prosecutor's argument was plainly based on the record evidence in fair response to defense arguments. **Clancy**, 192 A.3d at 65. **See also Guilford**, 861 A.2d at 371–72.

Appellant also alleged five separate instances in which the prosecutor allegedly argued facts not in evidence. Appellant's Brief, 23-25. These were rhetorical flourishes. We do not find that the prosecutor's intent was to mislead the jury. **See Miles**, 681 A.2d at 1300. Moreover, as the PCRA court noted "the jury was instructed that the statements during closing were not evidence and instead facts presented by witnesses was controlling." PCRA Court Opinion, 5. **See** N.T. 3/10/15, 222-223. "The jury is presumed to follow the court's instructions." **Tedford**, 960 A.2d at 37.

Four of the comments listed by Appellant as not having been based on evidence in the record were:

> Josiah did what so many witnesses do in homicides, right? He got up here and he said I don't think I said that, that's not what I said to Homicide. …

> The detective work in this case was called into question, and it always will be. Every defense attorney in a homicide will get up and say the assigned detective did a bad job, he should have done something different.…

> Anybody in the police academy can tell you getting up over a seven foot wall is as easy as putting your hands on it. …

> You know why we wait, besides the backlog and all of that? Because we would have loved to have that gun.

Appellant's Brief, 23-25.

Josiah McClarence denied his written and signed statement to the police at trial. *See* N.T. 3/3/15, 84-128. Thus, the prosecutor's extrapolation that "so many witnesses do [the same] in homicides" was of no particular moment in this case even if there was no evidence that such is commonplace. N.T. 3/10/15, 187. *See* Appellant's Brief, 23. The broader, more important and wholly accurate point the prosecutor made was that the written statement was "substantive evidence." N.T. 3/10/15, 187.

Similarly supported by the record generally was the prosecutor's reference to "[a]nybody in the police academy." N.T. 3/10/15, 144. *See* Appellant's Brief, 24-25. The key point here was that Gianni Bain testified that he had "hop[ped]" the stone wall in the backyard of the victim's home to escape from the shooting. N.T. 3/3/15, 320-321. Defense counsel expressed

disbelief that such was possible on cross-examination and argument. *See* N.T. 3/4/15, 336; N.T. 3/10/15, 108. The prosecutor directly responded, "I don't know, by the way, what people are talking about that Gianni, a six-foot kid, can't get up over a seven-foot wall, six-foot athletic kid. Of course he can. Anybody in the police academy can tell you getting up over a seven-foot wall is as easy as putting your hands on it and getting over it. And Gianni at the time was a nineteen-year-old teenager, right? Of course he can get over that wall." The reference to the police academy was immaterial to the prosecutor's argument, based on trial evidence and common experience, that Gianni Bain's testimony was credible. *Clancy*, 192 A.3d at 65; *Drummond*, 775 A.2d at 858.

The reference to "[e]very defense attorney in a homicide" by the prosecutor may have been unsupported rhetoric in isolation. N.T. 3/10/15, 151. *See also* Appellant's Brief, 24. However, in this case, the defense did argue, as the prosecutor said, that "the assigned detective did a bad job, he should have done something different." N.T. 3/10/15, 151. *See id.*, 75-79, 81-82, 84-87. Thus, the prosecutor was responding directly to defense closing argument and relying on evidence in the record. *Clancy*, 192 A.3d at 65.

On this same line, the prosecutor addressed several specific points the defense had raised. N.T. 3/10/15, 150-152. One of which was the delay in examining the ballistics evidence resulting in a report being completed and turned over to the defense shortly before trial. *See id.*, 151-152; N.T. 3/3/15, 56-57. The defense attacked the delay. N.T. 3/10/15, 84. The prosecutor first

referred to the officer's testimony that he was a witness in three trials that day to explain the backlog. *Id*., 151. He then argued that ballistics experts would not want to conduct the examination too soon because additional evidence might be discovered. *Id*., 152. For example, in this case, a projectile was found, across the street, two months after the shooting. It was consistent with the caliber of ammunition used by co-defendant and located in a direction in which co-defendant would have fired a shot at the fleeing Justin Mond. The prosecutor suggested that the examiners would have also been waiting for a firearm used by co-defendant. *Id*. Although there was no testimony to directly support this, it was a reasonable extrapolation from the ballistics expert's testimony that without the firearm used in the shooting, it was not possible to rule in or out the possibility of a second gun having been fired at the scene. N.T. 3/6/15, 30-31.

The fifth allegation of an argument based on facts not in evidence referred to the prosecutor discussing his own decision not to carry a firearm though often in a place where he might come face-to-face with a person accused of a violent crime, as follows:

> Well, here's the thing about that. I don't have a gun. I'm a homicide prosecutor. Every day I go meet with people. I go to scenes. I go talk to people where I'm in danger. And before I was a homicide prosecutor I spent five years as a domestic violence prosecutor and I never had a gun then either. The reason I don't have a gun is because my wife is against guns. She hates them. She won't let me have one.
>
> When you're a domestic violence prosecutor, there's an incredibly high percentage chance that when you go to the scene, to the victim's house, to the survivor's house, and you go talk to them

- 16 -

that you're going to meet the defendant there. But I love my job and I love my wife, so I don't carry a gun.

The reason no one ever saw any of these kids with a gun is because they didn't have a gun. And they may be able to convince you that I have a gun too, but the God's honest truth is this weekend I'll be somewhere I shouldn't be without a gun because I don't carry a gun, the same way that Gianni and Aaron and Tremaine and Nkingi went over that house without a gun because they didn't have a gun, and that's why no one has ever seen any of them with a gun.

Appellant's Brief, 23-24. **See** N.T. 3/10/15, 175-177.

Although the personal possession of a firearm by the prosecutor was not a fact in evidence, the argument presented did not ask the jury to base its verdict on his personal decision. It was offered as an illustration to rebut a defense argument that Aaron Rogers *must have had a gun* on him when he returned to the scene of the initial fight with Gianni Bain and Nkingi Jones. **See** N.T. 3/10/24, 26-27, 99-101.[5] Rather than asking the jury to decide the case on a fact not in evidence, the prosecutor was illustrating that it was not necessarily true, as the defense had argued, that either Aaron Rogers or Gianni Bain must have possessed a firearm when they returned to the scene of the initial fight. "It's one thing to think that somebody may possibly be getting a gun. It's a whole 'nother thing to say, oh, that's crazy, … they would never have gone back over there without a gun." N.T. 3/10/15, 176. This was vigorous argument by the prosecutor based on legitimate inferences from the

_____

[5] The defense argument was based on the testimony of Gianni Bain that after the initial fight he believed that Josiah McClarence went to get someone bigger, or a gun, to exact revenge. This belief led Gianni Bain and Nkingi Jones to tell Aaron Rogers what had happened and to return with him to the area of the initial fight. N.T. 3/3/15, 303-304, 375-376; N.T. 3/4/15, 84-85, 146-148.

- 17 -

trial testimony and therefore proper. **Commonwealth v. Luster**, 71 A.3d 1029, 1048 (Pa. 2013) (*en banc*).

Appellant's second enumerated claim in this appeal also is based on five distinct comments in the prosecutor's summation. He argues that appellate counsel provided ineffective assistance "when arguing that improper reference had been made to [Appellant's] post-arrest silence, leading this Court to hold that the issue could not be decided." Appellant's Brief, 29. This is only half correct. This court found waiver because counsel had not provided citations to the record, **Direct Appeal**, *4, but it also ruled that "[e]ven if we did not find waiver, an examination of the portions of argument cited to by Appellant do not reveal any inference by the prosecutor regarding Appellant's post-arrest silen[ce] but, instead, [he] discuss[ed] Mr. Hall's testimony regarding his claim of self-defense." **Id**. In other words, this Court addressed the merits of the claim. Therefore, the predicate of the ineffectiveness allegation against appellate counsel – that the claim was not reviewed – is not correct.

Generally, the Commonwealth may not comment on, or otherwise refer to, an accused's post-arrest silence in a subsequent criminal proceeding. **E.g., Doyle v. Ohio**, 426 U.S. 610, 611 (1976); **Commonwealth v. Clark**, 626 A.2d 154, 156 (Pa. 1993). "[E]ven an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt," **Commonwealth v. Adams**, 104 A.3d 511, 517 (Pa. 2014) (quoting **Commonwealth v. Whitney**, 708 A.2d 471, 478 (Pa. 1998)), or if it is harmless beyond a

reasonable doubt. ***Commonwealth v. Mitchell***, 839 A.2d 202, 212-13 (Pa. 2003); ***Commonwealth v. Boone***, 862 A.2d 639, 646 (Pa. Super. 2004).

After our own review, we agree with this Court's prior ruling on the merits and conclude that appellate counsel could not have presented the claim more effectively on direct appeal such that Appellant would have been entitled to relief. None of the comments cited by Appellant refer directly to him. Rather, each, either directly by name or in context, referred to co-defendant's testimony. Accordingly, the prosecutor was not commenting on Appellant's silence at all.

> Four of the alleged comments on Appellant's post-arrest silence are:
>
> And they are fantastic attorneys and they spent all week trying to convince you that there was a gun there that was never there, that no evidence ever said was there until the day yesterday when Tyreek Hall got up here and said not what he said the night of, right? When he admitted to murder. Not what he said then but what he said eighteen months later, oh yeah, that one guy Aaron Rogers, he had a gun. …
>
> There's only one target left, and that one target is running up the street. And when he fires at that target, he loses all ability, all credibility whatsoever to say, oh, I was just shooting this way because I saw a gun in the waistband of a guy and I didn't remember until eighteen months after that I saw that gun. He loses it all. …
>
> No. He didn't want us to find that gun because if we found that gun, you know what we would have found. And so the one guy for eighteen months who could have turned over that gun, who could have helped us locate that gun, waits until yesterday to say it was Southwest Reek, or excuse me, it was Dave from Southwest who works for the school district. …
>
> And then eighteen months later, after he admits to murder, he has the audacity to sit in front of you folks and to say, to say in

front of the family that there was a gun there that he just didn't mention for eighteen months.

Appellant's Brief, 30-31.

The gist of the prosecutor's arguments challenged co-defendant's credibility. Co-defendant claimed that Aaron Rogers had a gun that he pulled first. This claim was first asserted at the time of trial, after Aaron Rogers had passed away one month prior. N.T. 3/6/15, 126. The prosecutor contrasted co-defendant's testimony at trial to what Daimeen Walker had said co-defendant told him at the time of the shooting: co-defendant admitted to shooting "at them" and said, he and Appellant "had to get out of the area because things went bad. One of the boys was talking too reckless." N.T. 3/3/15, 222-223. That was not a self-defense claim, and Daimeen Walker testified at trial that his statement was accurate and true. N.T. 3/3/15, 253. We find that "the Commonwealth was unarguably entitled to comment on the credibility of [a defense witness'] belated support of the self-defense theory." *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. 2008). This was fair response to defense argument. *Id*. More importantly the prosecutor's arguments were not a comment on Appellant's post-arrest silence at all. The allegation of appellate counsel's ineffective assistance with respect to these meritless claims thus fails the first prong of the *Strickland* test.

The fifth alleged comment requires an additional explanation. Appellant presents it as:

And so even though for the last eighteen months everything anyone ever said was that there was one gun there . . . they looked at the menu and they said self defense.

- 20 -

Appellant's Brief, 30.

This is the one comment that does not directly reference co-defendant's testimony. However, in context, it questioned the credibility of the self-defense claim, which only co-defendant's testimony supported. It was made at the start of the prosecutor's summation, and was a roadmap to why the jury should find the Commonwealth's witnesses more credible than co-defendant. It referred back to the opening statement when the prosecutor told the jury he did not know what the defense would be: "In a case like this, they get three options, right? Our guys weren't there, our guys weren't the shooters, self defense." N.T. 3/10/15, 123. He noted that five eyewitnesses to the events testified that Appellant and co-defendant were the assailants. "So the first two are out. They can't say it wasn't them. They can't say they weren't shooting. So they were left with one option and that's what they went with." *Id*.

Immediately following this, the prosecutor reached the selectively edited quotation that Appellant relies upon. Tellingly, the unedited quotation contains the explanation, basis and direction of the comment. The unitalicized argument is the factual context omitted by Appellant, as follows:

> *And so even though for the last eighteen months everything anyone ever said was that there was one gun there*, was that Aaron Rogers, a person they claim had a gun, was in the middle of playing basketball, wearing basketball shorts and a jersey, and everyone knows you can't have a loaded weapon on you or a weapon of any kind while you're playing basketball, even though those are the facts, even though every witness was consistent, even though every witness was cooperative, even though the

> ballistics showed that those kids were telling the truth, *they looked at the menu and they said self defense*.

N.T. 3/10/15, 123-124. In its full context, this was an entirely proper argument, discussing the trial evidence that undermined the credibility of co-defendant's testimonial assertion of self-defense. ***Rolan***, 964 A.2d at 410.

Appellant's third enumerated claim is that the PCRA court erred by not applying a standard of cumulative prejudice. Appellant's Brief, 34-35. Such standard is only applicable if there are multiple errors. "[N]o number of failed claims may collectively warrant relief if they fail to do so individually." ***Tedford***, 960 A.2d at 56. It is only where multiple instances of deficient performance are found that assessment of prejudice properly may be premised upon cumulation. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). As we find no merit to any of the 15 summation-based PCRA claims raised by Appellant, there is no basis to conduct the requested review. The PCRA court did not err.

Appellant's fourth enumerated claim alleges direct appeal counsel's ineffective assistance for declining to raise on appeal trial court error in denying trial counsel's request for the jury to be read co-defendant's testimony in response to a jury question. Appellant's Brief, 36-41. Appellant misconstrues the jury's question and the trial court's ruling.

The decision to permit the reading of trial testimony to the jury during its deliberation is left to the trial court's discretion. ***Commonwealth v. Johnson***, 838 A.2d 663, 677 (Pa. 2003); ***Commonwealth v. Peterman***, 244 A.2d 723, 726 (Pa. 1968). An abuse of discretion "takes one of three

- 22 -

forms. … It occurs if (1) the trial court committed an error of law; (2) the court exercised its judgment in a manifestly unreasonable manner; or (3) the court's decision was the result of partiality, prejudice, bias or ill-will, as shown by evidence on the record." **Commonwealth v. Ellis**, 313 A.3d 458, 462 (Pa. Super. 2024), **appeal denied**, 2024 WL 4440024 (Pa., filed Oct. 8, 2024).

On the first full day of deliberations the jury sent the trial judge the following note: "Please provide us with a transcript of all of Tyreek Hall's testimony." N.T. 3/11/15, 25. Rule of Criminal Procedure 646 forbids giving a "transcript of any trial testimony" to a jury while it is deliberating. Pa.R.Crim.P. 646(C)(1).

Appellant's counsel, ultimately joined by co-defendant Hall's counsel, argued that the jury "obviously want to hear [co-defendant's] testimony again." N.T. 3/11/15, 26. In doing so, counsel erroneously informed the court that the Rules do not prohibit giving the jury a transcript of trial testimony. **Id**. He added, "I'm not even asking for that at this juncture. I think we can accommodate their request by having it reread, like we do many, many times … by the court reporter." **Id**., 26-27. The Commonwealth suggested inquiring of the jury if there was something specific it was "looking for" because reading back the "whole testimony" would take significant time away from deliberating. **Id**., 27. The trial court was concerned that the only way to read the testimony back would be to have the court reporter "take some time and organize the notes and decipher the notes as he attempts to read it back."

*Id*., 28. It also noted that in 14 years as a trial judge there had been no "instance" in which the court "ever had anybody's testimony read back." *Id*.

Thus, after reinstructing the jury on malice, which it also had requested, the court responded to the jury's request for a transcript of all of co-defendant's testimony:

> … you must all recall that when I gave you preliminary instructions I advised you to pay close attention to the testimony because you would be called upon to rely on your recollection of the testimony during the course of your deliberations. Further, you were all permitted to take notes. My recollection is that the testimony was two days ago and it consumed approximately an hour. More crucial to the point with regards to the question you have asked me, the rules of court, Mr. Foreman, prohibit my sending out any transcript of any trial testimony. So I invite you ladies and gentlemen to resume your deliberations and if you have additional questions or concerns, you should feel free to bring those to my attention.

N.T. 3/11/15, 33-34. Although the jury did ask multiple additional questions over the next two days of deliberation, it did not request that co-defendant's testimony be read to them.

After the court explained its reasons for not permitting the jury to have a transcript of co-defendant's testimony as requested, Appellant's counsel – not co-defendant's – accused the court of "playing semantic games with the jury." N.T. 3/11/15, 34.

THE COURT: That's an insult.

[Trial Counsel]: No, it's not.

THE COURT: These are intelligent people. They asked for a transcript.

> [Trial Counsel]: I'm putting something on the record. You can deny it. I'm putting it on the record.
>
> THE COURT: I'm speaking now.
>
> [Trial Counsel]: I want to put something on.
>
> THE COURT: I'm speaking now. Don't accuse me of playing semantic games or any other kind of games. They asked for a transcript. The rules say they can't have a transcript.

N.T. 3/11/15, 35. Trial counsel eventually calmed down enough to restate the objection as the jury wanting "the testimony of Mr. Hall to help them decide this case. That is clearly what they've asked for." *Id*., 36. He also added, for the record, "that the court reporter has indicated within ten minutes, and probably could have been done already by this point in time, have had that done and could have read it completely to this jury within an hour to an hour and a half." *Id*.

In response, the court explained its reasoning for denying Appellant's renewed objection:

> First of all, they didn't ask to have the testimony read back. Secondly, they asked for a transcript, which is prohibited by Rule 646. Third, reading testimony back to them doesn't convey to the jury the demeanor of the testifying witness and it is not exactly a reproduction of what happened during the taking of the testimony. Lastly, I'm not the least bit concerned about time. It is in my discretion. I've made my ruling and my ruling stands.

N.T. 3/11/15, 37-38.

We discern no abuse of discretion in the court's ruling. It did not, as Appellant would have us believe, adopt an "inflexible rule" that testimony should never be read to the jury. *See* Appellant's Brief, 38-39. It merely noted that doing so was far more difficult than Appellant's counsel had initially

suggested. The court plainly stated that it was exercising its discretion to deny the request by trial counsel to have all of co-defendant's testimony read back to the jury.

This was a reasonable exercise of discretion, because co-defendant's testimony was recent – certainly compared to the four eyewitnesses who testified during the first two days of trial – and the court had permitted the jury to take notes. It would have been reversible error, if rereading co-defendant's testimony would place "undue emphasis on one witness's testimony." *See Peterman*, 244 A.2d at 726. This would have been likely given that the testimony that contradicted co-defendant's claim of self-defense had been heard the week prior. Additionally, the trial court's concern that having co-defendant's testimony read to the jury by the court reporter would not "convey to the jury the demeanor of the testifying witness" nor would it "reproduce[e] … what happened during the taking of the testimony" was sufficient by itself to affirm the court's exercise of discretion. *Commonwealth v. Patterson*, 180 A.3d 1217, 1235 (Pa. Super. 2018) (holding that it was not an abuse of discretion for a trial court to decline to have an appellant's testimony read to a deliberating jury because it "would not provide the jury with the same benefit of observing [appellant] or his demeanor or the manner in which [appellant] testified") (internal quotation marks omitted).

We find that the underlying claim that the trial court abused its discretion was without arguable merit. Counsel cannot be deemed ineffective

for having declined to raise a meritless claim. ***Commonwealth v. Davis***, 262 A.3d 589, 596 (Pa. Super. 2021).

Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2024